HILL, Chief Justice.
 

 [T1] Judith D. Kimble (Mother) filed a petition to recover unpaid child support, medical expenses, and other monies due her pursuant to a decree of divorce. The district court denied the petition, finding that Mother had entered into an oral agreement with James D. Ellis (Father), wherein she agreed to relinquish any right to pursue recovery of monies she had expended prior to the emancipation of the parties' children in exchange for a lump sum settlement. The district court concluded that the agreement did not violate the stricture that a custodial parent has no authority to waive child support as set forth in cases like Whitt v. State ex rel. Wright, 2001 WY 128, 36 P.3d 617 (Wyo.2001) because Mother was compromising a claim that was personal to her and there were no adverse affects on the children, as they were emancipated. We conclude that the oral agreement is void because it violated
 
 *948
 
 our bright-line rule prohibiting a custodial parent from waiving unpaid child support. We reverse and remand.
 

 ISSUES
 

 [T2] Mother presents a single issue for our review:
 

 Did the trial court commit reversible error when it found that the parties reached an enforceable agreement in 1998 waiving the sums owed by [Father] for child support and health costs for the parties' minor children, together with [Mother's] other claims, since the verbal agreement of the parties, which was entered into in 1998, was void and unenforceable as against public policy and [Mother] did not have the authority to enter into such an agreement?
 

 The Father expresses the issue as:
 

 Did the trial court commit reversible error when it denied [Mother's] Verified Petition to Revive Judgment after learning that the parties had entered into an oral settlement agreement whereby [Mother] agreed she would not pursue reimbursement from [Father] of monies expended by [Mother] during the parties' children's minor years?
 

 FACTS
 

 [¶3] The parties were divorced in 1988. Father did not make an appearance, and the divorcee decree was entered by default. The parties had two daughters, one born on September 6, 1978, and the other on July 6, 1980. Pursuant to the divorcee decree, Mother was awarded custody of the children, subject to reasonable visitation, and Father was required to pay child support until the children had reached the age of nineteen or were otherwise emancipated, half of the children's health care costs, and $2,500.00 as his portion of the marital indebtedness. At the time of the divorce, Father was disabled and so initially was required to pay child support at the rate of $100.00 per month per child with the amount of his obligation becoming 15% of his gross monthly income onee he was released to return to full-time work.
 

 [¶4] Father left Wyoming sometime around the divorce and had no contact with his children or Mother for five years. Father made no child support payments or contributions to the children's health care during this period. In the spring of 1998, Mother learned of Father's whereabouts in Colorado and contacted him. Father re-established a relationship with his children and began to make sporadic child support payments. In 1998, Father offered to pay Mother $6,000.00, along with the children's college and wedding expenses, if she would forego all claims against him for past child support, health care costs, and the amount of marital indebtedness he had been required to pay. Later, Father requested that the amount he was to pay be reduced to $4,500.00 because he could not afford to pay more. Mother agreed and accepted the offer, which was not put into writing nor submitted to a court for approval.
 

 [¶5] The parties two children were emancipated in 1996 and 1999 respectively. Mother had come to believe that Father had reneged on his part of their settlement, so on December 20, 2001, she filed a Verified Petition to Revive Judgment seeking to recover the child support, health care costs, and marital indebtedness amounts that Father had failed to pay under the divorce decree. On January 8, and 12, 2002, after the petition had been filed, both of the children executed assignments transferring any interest they may have had in the unpaid child support to Mother.
 

 [¶6] A hearing was held on Mother's petition on January 28, 2003, and continuing on June 18, 2008. The court issued a decision letter on August 14, 2003, denying the petition. The court concluded that the parties' agreement did not contravene the public policy considerations underlying Whitt %19, which held that a custodial parent cannot legally waive back child support because the obligation is for the exclusive benefit of the children. The court relied on the fact that the children were emancipated and had assigned their rights to Mother so they would not be affected by enforcement of the settlement agreement. The court concluded that Mother could clearly compromise any claim that was solely hers on whatever terms were acceptable to her. The court held that the settlement agreement was enforceable and
 
 *949
 
 precluded Mother from any further action to collect child support. Mother has now appealed.
 

 STANDARD OF REVIEW
 

 [¶7] When a matter has been tried before the district court without a jury, our review of the court's findings of fact is under the clearly erroneous standard. Broek v. County of Washakie, 2003 WY 164, 15, 82 P.3d 269, 15 (Wyo.2003). Conclusions of law are reviewed de novo. Id.; Davis v. Chadwick, 2002 WY 157, ¶ 8, 55 P.3d 1267, ¶ 8 (Wyo.2002).
 

 DISCUSSION
 

 [¶8] We have consistently stated that child support is for the benefit of the children, and that the custodial parent stands in the shoes of a trustee who administers the money for the exclusive benefit of the children based upon their needs and welfare. Sue Davidson, P.C. v. Naranjo, 904 P.2d 354, 356-57 (Wyo.1995); Bellamy v. Bellamy, 949 P.2d 875, 877 (Wyo.1997); Hammond v. Hammond, 14 P.3d 199, 202-03 (Wyo.2000); Erhart v. Evans, 2001 WY 79, ¶ 15, 30 P.3d 542, ¶ 15 (Wyo.2001). A child's right to adequate support cannot be bargained away by a contract between the parents regardless of the validity of the agreement between the parents themselves. Whitt ¶ 19; Hurlbut v. Searbrough, 957 P.2d 839, 842 (Wyo.1998). This is a bright-line rule from which we have not wavered:
 

 This Court has noted that child support orders have a unique and special position in the law. Sue Davidson, P.C. v. Naranjo, 904 P.2d 354, 356 (Wyo.1995). We have stated that child support payments are the children's monies:
 

 Often misunderstood by parents embittered by divorce, "child support" represents a legal obligation of the parents to the children. "[Clhild support is for the benefit of the children as [a parent's] obligation to contribute to the upbringing of [the] children. A support payment is the children's money administered in trust by [the custodial parent] for their benefit."
 

 Cranston v. Cranston, 879 P.2d 345, 349 (Wyo.1994)(quoting Macy v. Macy, 714 P.2d 774, 777 (Wyo.1986)). Child support is indeed the children's money to be used for their exclusive benefit. Sue Davidson P.C., 904 P.2d at 357. As we acknowledged in Hurlbut v. Scarbrough, 957 P.2d 839, 842 (Wyo.1998): "[Blecause a child support obligation does not belong to the custodial parent, that parent does not have the authority to bargain it away." Equity cannot operate to override this basic policy behind the enforcement of a child support order. Following this reasoning, we conclude that the right to obtain support is not waived by the custodial parent's inability to act, inaction, or acquiescence to the nonpayment of child support if an action is brought within the statute of limitations. In addition, it is of no consequence that the arrearage will be paid to the mother rather than directly to the grown children. "Money paid to the custodial parent for past-due support serves to reimburse the custodian for monies actually expended." In re Marriage of Capetillo and Kivett, 85 Wash.App. 311, 932 P.2d 691, 694 (1997).
 

 Hammond, 14 P.3d at 202-03.
 

 [¶9] Mother argues that the district court's decision was erroneous because the agreement between her and Father was void from its inception under this Court's precedent just noted. Father counters that the district court's enforcement of the agreement was proper because Mother only bargained away her personal right to pursue any child support arrearage, not his obligation to the children or their right to seek those monies. Father contends that the public policy considerations underlying the prohibition against the waiving of child support do not apply here because the children are emancipated and no longer require the protection of the courts so that they will not be adversely affected by Mother's relinquishment of her right to reimbursement.
 

 [¶10] The question presented by this case is whether or not the custodial parent has the authority to waive his or her right to reimbursement for monies spent because of the failure of the other parent to maintain his or her child support obligations.
 
 *950
 
 Under the cireumstances of this case, we conclude that there was no such authority. Since a custodial parent may not waive child support through an extrajudicial agreement or contract, it then logically follows that the parent has no authority to waive his or her procedural remedies. This is especially true where, at the time of the agreement, the children are still beneficiaries under the child support provisions of the divorcee decree. The custodial parent is in the position of trustee to those children with respect to child support monies. The parent cannot fulfill the duties and obligations of that position, having compromised the right to the remedy for unpaid support.
 

 [T11] Custodial parents who have been forced to provide for their children in the absence of child support can find themselves in a vulnerable position in which they are forced to choose between their immediate financial needs and their duty as trustee of their children's welfare. An obligor, secure in the knowledge that his or her children will be unlikely to ever seek to collect the arrear-ages owed, could exploit the situation through persuasion or coercion, and obtain an agreement with the custodial parent that by the use of artful language referring only to the right to seek reimbursement, would allow obligor to avoid indirectly those obligations that he or she is explicitly prohibited from avoiding.
 

 [T12] Those concerns are highlighted by the cireumstances of this case. At the time the parties entered into their settlement agreement, one of the children was emancipated and no longer the subject of child support. The other child, however, was entitled to child support for another thirteen months. Mother was faced with a difficult financial situation. Father had not paid any child support for approximately five years after the divorce and then only sporadically thereafter until 1998, when he offered Mother a lump sum of money in exchange for a promise not to pursue any unpaid child support. The amount offered by Father was only a small fraction of the amount owed, but that was obviously appealing to Mother in a situation where she was facing financial difficulties and was not receiving support payments anyway. The result is that the parties' minor child was deprived of the support to which she was legally entitled and for which Father was legally obligated. Mother, despite her status as trustee, was effectively precluded from enforcing her child's rights to Father's support under the agreement. Such a result cannot stand under our precedent and the public policy rationale underlying it.
 
 [1]
 

 [T18] The thrust of our precedent is that parties may not unilaterally or jointly modify or abrogate the terms of a child support order. A court that obtains proper jurisdiction over a divorce action retains jurisdiction to modify or enforce the support provisions of the decree. Hurlbut, 957 P.2d at 841. Contract law has no place in the consideration of child support agreements. Sharpe v. Sharpe, 902 P.2d 210, 213-14 (Wyo.1995). If the parties reach an agreement that would effect a modification of the child support order, then the proper procedure is the filing of a petition for modification.
 

 "Under our statute the obligation of support is a continuing one; it is also one which is at all times subject to change upon proper request to the court for modification or clarification contingent upon a change in circumstances of the parties."
 

 Erhart, ¶ 15 (emphasis in original) (quoting Redman v. Redman, 521 P.2d 584, 587 (Wyo.1974)). The parties failed to follow the proper procedure and, therefore, the agreement was never valid and was not enforceable.
 

 [114] We hold that any agreement that purports to waive unpaid child support or the custodial parent's right to enforce the support order without proper approval from a court of competent jurisdiction is void ab initio. We reverse the district court's judg
 
 *951
 
 ment and remand for a determination of the amount of arrearages.
 

 [1]
 

 . The situation confronted here must be distinguished from those where the custodial parent is a recipient of government aid pursuant to Wyo. Stat. Ann. § 20-6-106(a) (LexisNexis 2003). In those cases, the custodial parent's right to child support, accrued, present or future, are assigned by operation of law to.the Department of Family Services. See Whitt, ¶ 19.